1  BRENDAN DOLAN, State Bar No. 126732
   ERIC MECKLEY, State Bar No. 168181
2  MORGAN, LEWIS & BOCKIUS LLP
   One Market Street
3  San Francisco, CA 94105
   Tel: 415.442.1000
4  Fax: 415.442.1001

5  CLIFFORD D. SETHNESS, State Bar No. 212975
   JASON M. STEELE, State Bar No. 223189
6  MORGAN, LEWIS & BOCKIUS LLP
   300 South Grand Avenue
7  Twenty-Second Floor
   Los Angeles, CA 90071-3132
8  Telephone:    213.612.2500
   Fax:          213.612.2501

9

   *Attorneys for Plaintiff*
10 PACIFIC MARITIME ASSOCIATION

11
                     UNITED STATES DISTRICT COURT
12
                  NORTHERN DISTRICT OF CALIFORNIA
13

   PACIFIC MARITIME ASSOCIATION, a          Case No.
14 California corporation,
                                            **COMPLAINT FOR CONFIRMATION
15              Plaintiff,                   AND ENFORCEMENT OF LABOR
                                            ARBITRATION AWARD**
16      vs.

17 INTERNATIONAL LONGSHORE AND
   WAREHOUSE UNION, an
18 unincorporated labor organization,

19              Defendant.

20

21      Plaintiff PACIFIC MARITIME ASSOCIATION, for their Complaint against defendant

22 herein, alleges as follows:

23                              **JURISDICTION**

24      1.      This is an action to confirm and enforce a final and binding arbitration award

25 issued pursuant to a collectively-bargained grievance and arbitration machinery.  This action

26 arises under Section 301 of the Labor Management Relations Act of 1947, as amended (29 U.S.C.

27 § 185).  Jurisdiction is conferred upon this Court by the provisions of that section.

28      2.      Plaintiff PACIFIC MARITIME ASSOCIATION (hereinafter "PMA") is, and at all

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-LA/990364.1                                                    COMPLAINT

1  times mentioned herein was, a non-profit corporation organized and existing under and by virtue

2  of the laws of the State of California.  PMA maintains its principal office at 555 Market Street,

3  San Francisco, California.

4      3.    PMA is a multiemployer collective bargaining association whose members include

5  stevedoring, terminal, and shipping companies that employ dockworkers, such as longshore

6  workers and marine clerks, throughout the United States Pacific Coast.  PMA represents these

7  employers in their collective bargaining relations with the employee labor organizations

8  representing dockworkers in the negotiation of collective bargaining agreements and the

9  administration and enforcement of the provisions thereof.  PMA and its members are, and at all

10 times mentioned herein were, employers in an industry affecting commerce, as defined in Section

11 501 of the Labor Management Relations Act of 1947 (29 U.S.C. § 142) and Section 2 of the

12 National Labor Relations Act (29 U.S.C. § 152) and within the meaning of Section 301 of the

13 Labor Management Relations Act (29 U.S.C. § 185).

14     4.    Defendant INTERNATIONAL LONGSHORE AND WAREHOUSE UNION

15 (hereinafter "ILWU") is an unincorporated association commonly known as a labor union and

16 maintains its principal offices in San Francisco, California.  The ILWU is, and at all times

17 mentioned herein was, the duly certified collective bargaining representative for dockworkers

18 employed by members of PMA on the Pacific Coast.  The ILWU, on behalf of itself and each of

19 its longshore and marine clerk locals in California, Oregon and Washington, negotiates and enters

20 into the collective bargaining agreements described below with PMA, covering terms and

21 conditions of employment of dockworkers employed by PMA members on the Pacific Coast.

22 The ILWU is, and at all times mentioned herein was, a labor organization representing employees

23 in an industry affecting commerce, as defined in Section 501 of the Labor Management Relations

24 Act (29 U.S.C. § 142) and Section 2 of the National Labor Relations Act (29 U.S.C. § 152) and

25 within the meaning of Section 301 of the Labor Management Relations Act (29 U.S.C. § 185).

26                    **FACTUAL BACKGROUND**

27     5.    The ILWU, by and through its respective officers, designated members, and

28 agents, is the sole and exclusive collective bargaining agent for the longshore workers and marine

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2                                              COMPLAINT

1  clerks employed by members of PMA in ports along the West Coast, and has held itself out as

2  possessing, and does possess, the requisite legal authority to become and remain parties to a

3  binding contract with PMA for and on behalf of these workers.

4       6.      The ILWU, on behalf of its longshore and clerk locals in California, Oregon and

5  Washington, and all employees performing work thereunder, and PMA on behalf of its members,

6  entered into the PACIFIC COAST LONGSHORE AND CLERKS AGREEMENT 2002-2008,

7  effective as of July 1, 2002 (hereinafter the "PCLCA"). The PCLCA covers longshore workers

8  and marine clerks employed by PMA members. The PCLCA is, and at all times mentioned

9  herein was, in full force and effect. The ILWU has copies of the PCLCA.

10      7.      Section 11 of the PCLCA, entitled "NO STRIKES, LOCKOUTS AND WORK

11  STOPPAGES," provides in part as follows:

12          "11.1 There shall be no strike, lockout or work stoppage for the life of this
    Agreement."
13

14          "11.2 The Union or the Employers, as the case may be, shall be required to secure
    observance of this Agreement."

15          "11.43 Application of Contract Grievance Machinery."

16          "11.431 The grievance machinery, pending investigation and adjudication of on
    the job disputes, requires that work shall be performed in accordance with specific
17      provisions of the Agreement, or if the matter is not covered by the Agreement, work shall
    be continued as directed by the employer."
18
    Exceptions to Section 11.431 (not relevant here) arise only where workers in good faith
19
    believe that to continue to work pending resolution of the dispute (1) immediately endangers
20
    health and safety or (2) imposes an onerous workload.
21
        8.      Section 17 of the PCLCA, entitled "JOINT LABOR RELATIONS
22
    COMMITTEES, ADMINISTRATION OF AGREEMENT AND GRIEVANCE
23
    PROCEDURES," provides a mandatory procedure for the presentation, adjustment and
24
    settlement of grievances, with binding arbitration as the final step, and states in part as follows:
25
            "17.15. The grievance procedure of this Agreement shall be the exclusive remedy
26      with respect to any disputes arising between the Union or any person working under this
    Agreement or both, on the one hand, and the Association or any employer acting under
27      this Agreement or both, on the other hand, and no other remedies shall be utilized by any
    person with respect to any dispute involving this Agreement until the grievance procedure
28      has been exhausted."

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

                                                3                                    COMPLAINT

1    "17.16. Pending investigation and adjudication of such disputes work shall
2    continue and be performed as provided in Section 11 ."

3    "17.24. In the event that the Employer and Union members of any Joint Port Labor
     Relations Committee shall fail to agree upon any question before it, such question shall
     immediately be referred at the request of either party to the Area Arbitrator for hearing
4    and decision, and the decision of the Area Arbitrator shall be final and conclusive except
     as otherwise provided in Section 17.26 [relating to appeals].

5
6    "17.57. All decisions of Arbitrators shall be observed and/or implemented. No
     decision of an Area Arbitrator, interim or final, can be appealed unless it is observed
     and/or implemented."

7

8    9.    The ILWU, its officers and members, and all persons working under the PCLCA,

9    are under a duty to abide by the above-mentioned no strike and grievance and arbitration

10   provisions of the PCLCA.

11                                   **COUNT ONE**

12   10.    On January 28, 2008, the ILWU Longshore Caucus – a representative body of

13   longshore workers, clerks and foremen that governs the Longshore Division of the ILWU – held a

14   two-week conference in San Francisco, California, at which delegates voted "to support a

15   resolution calling for an eight-hour 'stop-work' meeting during the day-shift on Thursday, May 1

16   at ports in CA, OR and WA to protest the war by calling for the immediate, safe return of U.S.

17   troops from Iraq."

18   11.    According to the resolution, posted by Robert McEllrath, International President of

19   the ILWU, on a website for the planned work stoppage, *www.uslaboragainstwar.org*, "it is time

20   to take labor's protest to a more powerful level of struggle by calling on unions and working

21   people in the U. S. and internationally to mobilize for a 'No Peace No Work Holiday' May 1,

22   2008 for 8 hours to demand an immediate end to the war and occupation in Iraq and Afghanistan

23   and the withdrawal of U. S. troops from the Middle East ...."

24   12.    The planned work stoppage has been widely publicized. The ILWU has informed

25   PMA of its intent to proceed with the action, published an announcement on its website and in its

26   monthly newsletter to members, and Mr. McEllrath personally has sent letters to the AFL-CIO,

27   the Change to Win Coalition, and other labor organizations seeking their support. As Mr.

28   McEllrath stated, "[t]he Caucus has spoken on this important issue and I've notified the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4                                                           COMPLAINT

1    employers about our plans for 'stop work' meetings on May 1."

2           13.    The ILWU attempted to characterize the planned work stoppage as a monthly

3    stop-work meeting permitted under the PCLCA.  Section 12.3 of the PCLCA provides for

4    monthly stop-work meetings only during overtime hours on the *second shift*.  Any stop-work

5    meeting at any other time requires PMA approval.

6           14.    On March 17, 2008, James McKenna, President and CEO of PMA, sent Mr.

7    McEllrath a letter stating that the Employers would *not* agree to a May 1 stop-work meeting, and

8    considered any such job action to be in direct violation of the contracts.  Mr. McKenna requested

9    that the ILWU confirm by March 26, 2008 that the May 1 stop-work meeting would not occur.

10   The ILWU did not respond to PMA's letter.

11          15.    Thereafter, at a meeting on or about March 31, 2008, Mr. McEllrath orally

12   indicated to Mr. McKenna that there would be no stop-work meeting on May 1, but did not state

13   that no other work stoppages would occur.  After the meeting, Mr. McKenna sent Mr. McEllrath

14   another letter, stating that PMA would not consent to a work stoppage or any other action aimed

15   at disrupting port operations.

16          16.    Mr. McKenna again asked the ILWU to confirm by April 9, 2008, in writing, that

17   the ILWU would not engage in any May 1 work stoppage.  Mr. McKenna also requested that Mr.

18   McEllrath remove the aforementioned postings and letters from the ILWU website and take steps

19   to ensure that all ILWU members would report to work on May 1 and perform their duties as

20   expected.

21          17.    The ILWU responded on April 8, 2008 by letter from Mr. McEllrath to Mr.

22   McKenna.  Mr. McEllrath stated that no ILWU local union would move its regularly scheduled

23   May stop-work meeting to the day shift on May 1, but explicitly declined to communicate to the

24   ILWU membership that there will be no stop-work meeting or other job action on May 1.

25   Instead, the ILWU in its April 2008 *Dispatcher* newsletter featured an article entitled "*Stop work*

26   *meetings on May 1 will focus on Iraq war.*"

27          18.    Mr. McKenna responded with another request that the ILWU take the affirmative

28   steps outlined in his April 9 letter.  The ILWU again refused, with Mr. McEllrath stating in a

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5                                                          COMPLAINT

1  letter that "the Longshore Division Caucus recently approved a resolution calling for a May 1

2  protest against the Iraq war. Consequently, *members from various locals will participate in*

3  *planned events on May 1.*" (emphasis added.) Mr. McEllrath went on to explain that manpower

4  may be limited on May 1. PMA has no other choice to conclude that the ILWU and its local

5  unions plan to move forward with a work stoppage or some other job action on May 1.

6          19.     On April 23, 2008, PMA submitted this dispute to Coast Arbitrator John Kagel,

7  the final step in the PCLCA's arbitration process. The Coast Arbitrator held a hearing at 9 a.m.

8  on April 24, 2008, in which he received evidence and arguments from both PMA and the ILWU.

9  The Coast Arbitrator ruled in PMA's favor. His award ordered the ILWU to notify all of its

10  members to report as normal on May 1, 2008.

11          20.     As of the filing of this Complaint, PMA has received no confirmation from the

12  ILWU that it has complied with the Coast Arbitrator's Award.

13          21.     The threatened illegal work stoppage described above will take place at the

14  instigation and with the encouragement of the ILWU and its officers. The conduct described

15  above and threatened on the part of the ILWU has been and will be carried on with the deliberate

16  purpose and design of damaging and disrupting the businesses of PMA's members, in full

17  recognition and disregard of the fact that it violates the no-strike and grievance and arbitration

18  provisions of the PCLCA and arbitration awards rendered thereunder.

19          22.     As a result of the above-described work stoppage, PMA's members reasonably

20  believe that they will be unable to load or unload cargo in accordance with the PCLCA at some or

21  all of the West Coast ports during the first shift on May 1, 2008. These disruptive activities of the

22  ILWU and its officers and members will result in delays and additional expenses with respect to

23  the operations and movement of waterborne cargo on the West Coast and in significant losses to

24  PMA's members, the shipowners, and the shipping public.

25          23.     PMA anticipates that, despite the Coast Arbitrator's Award, the ILWU will

26  continue to encourage and actually engage in an illegal work stoppage on May 1, 2008. If the

27  ILWU continues to refuse to comply with the Award, PMA expects to seek immediate injunctive

28  relief to protect its members from irreparable harm.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

COMPLAINT

24.     If such injunctive relief is requested, PMA's members have no adequate remedy at law because the delays incident to obtaining relief by way of an action for damages would result in serious and irreparable damage to their business before such relief could be obtained, and an attempt to sue the ILWU in a civil action at law would not prevent a continuation of the illegal acts and conduct. Adequate relief can be afforded by this Court only through this Court's exercise of its equitable jurisdiction.

25.     The granting of a temporary restraining order and injunction would not work any hardship on the ILWU, but denial of the temporary restraining order and preliminary injunction, if the ILWU carries out its illegal job action, would cause irreparable damage to PMA's members.

## PRAYER FOR RELIEF

As to Count One, Plaintiff PMA prays for judgment as follows:

1.     That the Court enter an order confirming and enforcing the Coast Arbitration Award.

2.     That the ILWU and its officers, agents, and representatives, immediately inform all of their members that the members must report for work as normal on May 1, 2008.

3.     If the ILWU carries through with its threatened job action or otherwise refuses to comply with the Coast Arbitrator's Award, that the ILWU and its officers, agents, employees, representatives, and members, and all companies, persons, and associations of persons acting in concert or participation with the ILWU, be permanently enjoined and restrained:

    (a)     From failing to comply with the above-referenced Arbitration Award;

    (b)     From failing to enforce and implement the above-referenced Arbitration Award; and

    (c)     From directly or indirectly engaging in any combination, agreement, arrangement or conspiracy to do the acts, or any of them, so enjoined.

4.     That upon trial of this action, judgment be had against the ILWU.

5.     For all damages sustained by PMA and its members as a result of the ILWU's

1    illegal work stoppage.

2    6.    For PMA's costs of suit incurred herein, including reasonable attorneys' fees; and

3    7.    For such other relief as the Court may deem just and proper.

4

5    Dated: April 30, 2008                                    MORGAN, LEWIS & BOCKIUS LLP

6

7                                                             By _____

8                                                             Brendan Dolan
                                                              Attorneys for Plaintiff
9                                                             PACIFIC MARITIME ASSOCIATION

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8                                                             COMPLAINT