1   BRENDAN DOLAN, State Bar No. 126732
    MORGAN, LEWIS & BOCKIUS LLP
2   One Market Street
    San Francisco, CA 94105
3   Tel: 415.442.1000
    Fax: 415.442.1001
4
    CLIFFORD D. SETHNESS, State Bar No. 212975
5   JASON M. STEELE, State Bar No. 223189
    MORGAN, LEWIS & BOCKIUS LLP
6   300 South Grand Avenue
    Twenty-Second Floor
7   Los Angeles, CA 90071-3132
    Telephone:    213.612.2500
8   Fax:          213.612.2554

9   *Attorneys for Plaintiff*
    PACIFIC MARITIME ASSOCIATION
10

11                  UNITED STATES DISTRICT COURT

12                NORTHERN DISTRICT OF CALIFORNIA

13  PACIFIC MARITIME ASSOCIATION, a          Case No.
    California corporation,
14                                           **MEMORANDUM OF POINTS AND**
                    Plaintiff,               **AUTHORITIES IN SUPPORT OF**
15                                           **PLAINTIFF PACIFIC MARITIME**
            v.                               **ASSOCIATION'S APPLICATION FOR**
16                                           **ORDER CONFIRMING AND**
                                             **ENFORCING ARBITRATION AWARDS,**
    INTERNATIONAL LONGSHORE AND              **FOR ISSUANCE OF A TEMPORARY**
17  WAREHOUSE UNION, an                      **RESTRAINING ORDER AND ORDER TO**
    unincorporated labor organization,       **SHOW CAUSE RE PRELIMINARY**
18                                           **INJUNCTION**
                    Defendant.
19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
  BOCKIUS LLP
ATTORNEYS AT LAW
 SAN FRANCISCO

**TABLE OF CONTENTS**

I.     INTRODUCTION .................................................................................................. 1

II.    STATEMENT OF FACTS ..................................................................................... 2
       A.    The Parties.................................................................................................. 2
       B.    The Collective Bargaining Agreement....................................................... 2
       C.    The Illegal Work Stoppage ........................................................................ 4

III.   ANALYSIS: THE COURT SHOULD ENFORCE THE ARBITRATION
       AWARDS AND ISSUE A TRO REQUIRING IMMEDIATE COMPLIANCE BY
       ILWU ............................................................................................................................ 6

IV.    AN INJUNCTION IS APPROPRIATE BECAUSE AN ILLEGAL WORK
       STOPPAGE IS ONGOING AND THE BALANCE OF EQUITIES STRONGLY
       FAVORS PMA AND THE EMPLOYERS ..................................................... 13

V.     THE ILWU IS RESPONSIBLE FOR THE ILLEGAL WORK STOPPAGE
       BECAUSE IT HAS CONDONED AND ENCOURAGED SUCH ACTION ................ 15

VI.    CONCLUSION .............................................................................................. 17

MORGAN, LEWIS &
BOCKIUS LLP.
ATTORNEYS AT LAW
SAN FRANCISCO

MEMORANDUM OF POINTS AND
AUTHORITIES

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Aguirre v. Chula Vista Sanitary Service*, 542 F.2d 779 (9th Cir. 1976) ........................... 13

*Allied Marketing Group, Inc. v. CDL Marketing, Inc.*, 878 F.2d 806 (5th Cir. 1989) ................................................................................................................... 15

*Alyeska Pipeline Serv. Co. v. International Brotherhood of Teamsters*, 557 F.2d 1263 (9th Cir. 1977) .................................................................................... 7, 9

*Arcamuzi v. Continental Airlines, Inc.*, 819 F.2d 935 (9th Cir. 1987) ............................. 13

*Avco Corp. v. Local Union #787, UAW*, 459 F.2d 968 (3d Cir. 1972) ............................ 11

*Boys Markets, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970) ..................................................................... 9, 12, 13

*Bricklayers, Masons, Marble and Tile Setters, Protective and Benevolent Union No. 7 v. Lueder Construction Co.*, 346 F.Supp. 558 (D. Neb. 1972) ...................... 11

*Buffalo Forge Co. v. United Steelworkers*, 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976) ................................................................................... 7, 9

*Campbell "66" Express, Inc. v. Rundel*, 597 F.2d 125 (8th Cir. 1977) ........................... 13

*Celotex Corp. v. Oil, Chemical & Atomic Workers International Union*, 516 F.2d 242 (3d Cir. 1975) ................................................................................................ 13

*Chalk v. U.S. District Court*, 840 F.2d 701 (9th Cir. 1988) ............................................ 15

*Chief Freight Lines Co. v. Local Union No. 886*, 514 F.2d 572 (10th Cir. 1975) ............ 13

*Complete Automobile Transit, Inc. v. Reis*, 451 U.S. 401, 101 S.Ct. 1836, 68 L.Ed.2d 248 (1981) ..................................................................................... 16

*Consolidation Coal Co. v. Local 1702 UMW*, 709 F.2d 882 (4th Cir. 1983) .................. 16

*Donovan Construction Co. v. Construction Prod. & Maintenance Laborers Union*, 533 F.2d 481 (9th Cir. 1976) ............................................................................... 14

*General Building Contractors Association v. Local Union 642, International Union of Operating Engineers*, 371 F.Supp. 1130 (E.D. Pa. 1974) ...................... 13

*Gresham v. Chambers*, 501 F.2d 687 (2d Cir. 1974) ...................................................... 13

*ILWU Local 34 v. Cargill*, 357 F.Supp. 608 (N.D. Cal. 1973) ......................... 7, 9, 11, 12

*Jacksonville Bulk Terminals v. ILA*, 457 U.S. 702 (1982) ............................................... 7

*New York Telephone Co. v. Communications Workers*, 445 F.2d 39 (2d Cir. 1971) ....... 13

*Northern Stevedoring & Handling Corp. v. ILWU*, 685 F.2d 344 (9th Cir. 1982) .......... 12

MORGAN, LEWIS & BOCKIUS LLP ATTORNEYS AT LAW SAN FRANCISCO

MEMORANDUM OF POINTS AND AUTHORITIES

*Otis Elevator v. Local 1, International Union of Elevator Constructors*, 684 F.Supp. 80 (S.D.N.Y. 1988) ................................................................. 14, 15

*PMA v. ILWU*, 304 F. Supp. 1315 (N.D.Cal. 1969) ........................................ 12

*PMA v. ILWU*, 454 F.2d 262 (9th Cir. 1971) ............................................. 8, 12

*PMA v. ILWU*, 517 F.2d 1158 (9th Cir. 1975) ......................... 1, 7, 8, 9, 10, 17

*PMA v. ILWU Local 10*, 1997 U.S. DIST. LEXIS 6017 (N.D. Cal. 1997) ...................... 8

*Paulsen v. County of Nassau*, 925 F.2d 65 (2nd Cir. 1991) ............................. 15

*San Francisco Electrical Contractors Association v. IBEW Local 6*, 577 F.2d 529 (9th Cir. 1978) ................................................................. 7, 9, 10, 11

*San Francisco-Oakland Newspaper Guild v. Tribune Public Co.*, 407 F.2d, 1327 (9th Cir. 1969) ............................................................................ 8

*Seattle Times Co. v. Seattle Mailers' Union*, 664 F.2d 1366 (9th Cir. 1982) .................. 16

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001) ...................................... 8

*Stead Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173, IAM*, 886 F.2d 1200 (9th Cir. 1989)............................................................. 8

*Textile Workers Union v. Lincoln Mills*, 353 U.S. at 448, 77 S.Ct. at 912, 1 L.Ed.2d at 972 (1957) .................................................................... 9, 11

*U-Haul International Inc. v. Jartran Inc.*, 522 F.Supp. 1238 (1981), aff'd, 681 F.2d 1159 (9th Cir. 1982) ....................................................... 15

*United States Steel Corp. v. UMW*, 519 F.2d 1249 (5th Cir. 1975)................................ 16

*United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960) ................................................ 7, 9

*Vulcan Materials Co. v. United Steelworkers*, 430 F.2d 446 (5th Cir. 1970) ................. 16

*Westmoreland Coal Co. v. International Union, United Mineworkers*, 910 F.2d 130 (4th Cir. 1990)............................................................... 13, 14

## FEDERAL STATUTES

29 U.S.C. § 101, *et seq*............................................................................. 6, 12

29 U.S.C. § 107 ...................................................................................... 12, 13

29 U.S.C. § 185 ...................................................................................... 1, 6, 9, 15

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

MEMORANDUM OF POINTS AND
AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Without immediate emergency relief from this Court, Defendant International Longshore and Warehouse Union ("ILWU"), and its various longshore and marine clerk locals, will engage in an illegal work stoppage at all West Coast ports on May 1, 2008, violating several arbitration awards, bringing the shipping industry to a standstill, and causing serious and irreparable harm to Plaintiff Pacific Maritime Association ("PMA") and its members who operate in those ports. PMA seeks simply to enforce the arbitration award of the Coast Arbitrator, who held unequivocally that, under the collective bargaining agreement, the ILWU may not engage in its planned work stoppage and that it must take specific steps to notify its members to report for duty as normal on May 1, 2008.  The ILWU has not complied with this award.

There is overwhelming authority supporting an order enforcing the arbitration awards, granting a temporary restraining order enforcing the award, and granting a preliminary injunction mandating compliance with the award.  PMA and the ILWU have litigated essentially the same issues in previous federal court litigation, including a nearly identical work stoppage planned for May 1, 2007 (Pacific Maritime Association v. ILWU, et al., C-07-2322, N.D. Cal. 2007).  See also, Pacific Maritime Association v. International Longshoremen's and Warehousemen's Union, 517 F.2d 1158 (9th Cir. 1975) (affirming district court's TRO requiring compliance with arbitration award barring ILWU from engaging in work stoppage).

PMA brings this action pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, for violation of the collective bargaining agreement between PMA and ILWU.  Section 301 specifically allows a federal court to order immediate compliance with a labor arbitrator's award.  As in PMA v. ILWU and in Alyeska, PMA seeks an Order confirming the arbitration awards, a temporary restraining order enforcing the award, and a preliminary and then permanent injunction restraining the ILWU and its officers, members, agents and employees, from failing to comply with the awards.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

MEMORANDUM OF POINTS AND
AUTHORITIES

1    II.    **STATEMENT OF FACTS**

2        A.    **The Parties**

3        PMA is a multi-employer association of shipping, stevedoring and terminal companies

4    which operate out of ports along the West Coast.  There are more than 80 PMA member company

5    employers.  PMA is the bargaining representative for its members, and handles their labor

6    relations issues with respect to longshoremen and marine clerks.

7        Defendant ILWU is the exclusive bargaining representative for all longshore workers and

8    marine clerks employed by PMA's members in ports in California, Oregon, and Washington.

9        B.    **The Collective Bargaining Agreement**

10        The ILWU, by and through its respective officers, designated members, and agents, is the

11    sole and exclusive collective bargaining agent for the longshore workers and marine clerks

12    employed by members of PMA in ports along the West Coast, and has held itself out as

13    possessing, and does possess, the requisite legal authority to become and remain parties to a

14    binding contract with PMA for and on behalf of these workers.

15        The ILWU, on behalf of its longshore and clerk locals in California, Oregon and

16    Washington, and all employees performing work thereunder, and PMA on behalf of its members,

17    entered into the PACIFIC COAST LONGSHORE AND CLERKS AGREEMENT 2002-2008,

18    effective as of July 1, 2002 ( "PCLCA").  The PCLCA covers longshore workers and marine

19    clerks employed by PMA members.  The PCLCA is, and at all times mentioned herein was, in

20    full force and effect.  The ILWU has copies of the PCLCA.

21        Section 11 of the PCLCA, entitled "NO STRIKES, LOCKOUTS AND WORK

22    STOPPAGES," provides in part as follows:

23            "11.1 There shall be no strike, lockout or work stoppage for the life of this
                Agreement."
24
                "11.2 The Union or the Employers, as the case may be, shall be required to
25        secure observance of this Agreement."

26            "11.43 Application of Contract Grievance Machinery."

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2                                MEMORANDUM OF POINTS AND
                                            AUTHORITIES

"11.431 The grievance machinery, pending investigation and adjudication of on the job disputes, requires that work shall be performed in accordance with specific provisions of the Agreement, or if the matter is not covered by the Agreement, work shall be continued as directed by the employer."

Exceptions to Section 11.431 (not relevant here) arise only where workers in good faith believe that to continue to work pending resolution of the dispute (1) immediately endangers health and safety or (2) imposes an onerous workload.

Section 17 of the PCLCA, entitled "JOINT LABOR RELATIONS COMMITTEES, ADMINISTRATION OF AGREEMENT AND GRIEVANCE PROCEDURES," provides a mandatory procedure for the presentation, adjustment and settlement of grievances, with binding arbitration as the final step, and states in part as follows:

"17.15. The grievance procedure of this Agreement shall be the exclusive remedy with respect to any disputes arising between the Union or any person working under this Agreement or both, on the one hand, and the Association or any employer acting under this Agreement or both, on the other hand, and no other remedies shall be utilized by any person with respect to any dispute involving this Agreement until the grievance procedure has been exhausted."

"17.16. Pending investigation and adjudication of such disputes work shall continue and be performed as provided in Section 11."

"17.24. In the event that the Employer and Union members of any Joint Port Labor Relations Committee shall fail to agree upon any question before it, such question shall immediately be referred at the request of either party to the Area Arbitrator for hearing and decision, and the decision of the Area Arbitrator shall be final and conclusive except as otherwise provided in Section 17.26 [relating to appeals].

"17.57. All decisions of Arbitrators shall be observed and/or implemented. No decision of an Area Arbitrator, interim or final, can be appealed unless it is observed and/or implemented."

The ILWU, its officers and members, and all persons working under the PCLCA, are under a duty to abide by the above-mentioned no strike and grievance and arbitration provisions of the PCLCA.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3                                    MEMORANDUM OF POINTS AND
AUTHORITIES

### C.    The Illegal Work Stoppage

On January 28, 2008, the ILWU Longshore Caucus – a representative body of longshore workers, clerks and foremen that governs the Longshore Division of the ILWU – held a two-week conference in San Francisco, California, at which delegates voted "to support a resolution calling for an eight-hour 'stop-work' meeting during the day-shift on Thursday, May 1 at ports in CA, OR and WA to protest the war by calling for the immediate, safe return of U.S. troops from Iraq."

According to the resolution, posted by Robert McEllrath, International President of the ILWU, on a website for the planned work stoppage, *www.uslaboragainstwar.org*, "it is time to take labor's protest to a more powerful level of struggle by calling on unions and working people in the U. S. and internationally to mobilize for a 'No Peace No Work Holiday' May 1, 2008 for 8 hours to demand an immediate end to the war and occupation in Iraq and Afghanistan and the withdrawal of U. S. troops from the Middle East ...."

The planned work stoppage has been widely publicized. The ILWU has informed PMA of its intent to proceed with the action, published an announcement on its website and in its monthly newsletter to members, and Mr. McEllrath personally has sent letters to the AFL-CIO, the Change to Win Coalition, and other labor organizations seeking their support. As Mr. McEllrath stated, "[t]he Caucus has spoken on this important issue and I've notified the employers about our plans for 'stop work' meetings on May 1."

The ILWU attempted to characterize the planned work stoppage as a monthly stop-work meeting permitted under the PCLCA. Section 12.3 of the PCLCA provides for monthly stop-work meetings only during overtime hours on the *second shift*. Any stop-work meeting at any other time requires PMA approval.

On March 17, 2008, James McKenna, President and CEO of PMA, sent Mr. McEllrath a letter stating that the Employers would *not* agree to a May 1 stop-work meeting, and considered any such job action to be in direct violation of the contracts. Mr. McKenna requested that the ILWU confirm by March 26, 2008 that the May 1 stop-work meeting would not occur. The ILWU did not respond to PMA's letter.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

MEMORANDUM OF POINTS AND
AUTHORITIES

1    Thereafter, at a meeting on or about March 31, 2008, Mr. McEllrath orally indicated to

2    Mr. McKenna that there would be no stop-work meeting on May 1, but did not state that no other

3    work stoppages would occur. After the meeting, Mr. McKenna sent Mr. McEllrath another letter,

4    stating that PMA would not consent to a work stoppage or any other action aimed at disrupting

5    port operations.

6    Mr. McKenna again asked the ILWU to confirm by April 9, 2008, in writing, that the

7    ILWU would not engage in any May 1 work stoppage. Mr. McKenna also requested that Mr.

8    McEllrath remove the aforementioned postings and letters from the ILWU website and take steps

9    to ensure that all ILWU members would report to work on May 1 and perform their duties as

10    expected.

11    The ILWU responded on April 8, 2008 by letter from Mr. McEllrath to Mr. McKenna.

12    Mr. McEllrath stated that no ILWU local union would move its regularly scheduled May stop-

13    work meeting to the day shift on May 1, but explicitly declined to communicate to the ILWU

14    membership that there will be no stop-work meeting or other job action on May 1. Instead, the

15    ILWU in its April 2008 *Dispatcher* newsletter featured an article entitled "*Stop work meetings on*

16    *May 1 will focus on Iraq war.*"

17    Mr. McKenna responded with another request that the ILWU take the affirmative steps

18    outlined in his April 9 letter. The ILWU again refused, with Mr. McEllrath stating in a letter that

19    "the Longshore Division Caucus recently approved a resolution calling for a May 1 protest

20    against the Iraq war. Consequently, *members from various locals will participate in planned*

21    *events on May 1.*" (emphasis added.) Mr. McEllrath went on to explain that manpower may be

22    limited on May 1. PMA has no other choice to conclude that the ILWU and its local unions plan

23    to move forward with a work stoppage or some other job action on May 1.

24    On April 23, 2008, PMA submitted this dispute to Coast Arbitrator John Kagel, the final

25    step in the PCLCA's arbitration process. The Coast Arbitrator held a hearing at 9 a.m. on April

26    24, 2008, in which he received evidence and arguments from both PMA and the ILWU. The

27    Coast Arbitrator ruled in PMA's favor. His award ordered the ILWU to notify all of its members

28    to report as normal on May 1, 2008.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MEMORANDUM OF POINTS AND
AUTHORITIES

Having receiving no confirmation that the ILWU had complied with the Coast Arbitrator's Award, PMA again raised the issue with the Coast Arbitrator on the morning of April 30, 2008. The Coast Arbitrator received evidence and argument from PMA and the ILWU and issued a written decision in PMA's favor. In his Award, the Coast Arbitrator incorporated by reference his April 24, 2008 award and concluded that "the Union's efforts to comply with the April 24, 2008 order fell short of the intent of the Agreements." The Coast Arbitrator's Award stated:

1.  The Union has not effectively complied with the April 24, 2008 ruling, in violation of Section 17.57.

2.  Any deliberate and/or concerted action of directing Longshoremen, Clerks and others that they are not to work, or that they are not working, on May 1, 2008 is a violation of Sections 11.1, and 11.2 of the PCLCD and PCCCD.

3.  There shall be no unilateral concerted job action or illegal work stoppage in violation of the Agreement during the May 1, 2008 day shift.

4.  The Union shall take immediate and affirmative steps to notify its Locals and members of their contractual obligation and direct all members to report to work as they normally do during the day shift on May 1, 2008.

Despite this clear directive, the ILWU still has not complied with the Coast Arbitrator's April 24, 2008 or April 30, 2008 Awards, and the ILWU continues to sponsor and encourage a massive work-stoppage that will effectively shut down the entire West Coast shipping industry.

## III.  ANALYSIS: THE COURT SHOULD ENFORCE THE ARBITRATION AWARDS AND ISSUE A TRO REQUIRING IMMEDIATE COMPLIANCE BY ILWU

### A.  The Arbitrators' Awards Are Final and Binding Interpretations of the CBA and Are Entitled to Confirmation and Enforcement.

In 1932, Congress enacted the Norris-LaGuardia Act (NLA), which generally prohibits the courts from issuing an injunction in a case "growing out of a labor dispute." 29 U.S.C. § 101, *et seq.* Fifteen years later, however, Congress passed the LMRA (also known as the Taft-Hartley Act). Section 301 of the statute vests the federal courts with jurisdiction over claims for breach of a collective bargaining agreement. 29 U.S.C. § 185(a). The Supreme Court has held repeatedly that Section 301 is an important exception to the NLA that authorizes the district courts to order

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

MEMORANDUM OF POINTS AND
AUTHORITIES

compliance with a final labor arbitration award. See, Jacksonville Bulk Terminals v. ILA, 457

U.S. 702, 711 n. 10 (1982) ("The employer may obtain an injunction to enforce an arbitrator's

decision that [a] strike violates the collective-bargaining agreement"); Buffalo Forge Co. v.

United Steelworkers of America , 428 U.S. 397, 405 (1976) ( "were the issue arbitrated and the

strike found illegal, the relevant federal statutes as construed in our cases would permit an

injunction to enforce the arbitral decision"); United Steelworkers v. Enterprise Wheel & Car

Corp., 363 U.S. 593, 599 (1960) (affirming district court's order "that defendant corporation must

promptly abide by the valid, complete and binding decision and award made by the arbitrator").

     The Ninth Circuit and district courts in this circuit, and in particular in cases involving

PMA and the ILWU, have granted and affirmed injunctions requiring compliance with an

arbitration award. See, San Francisco Electrical Contractors Ass'n v. IBEW Local 6 , 577 F.2d

529, 534 (9th Cir. 1978) (holding "that the preliminary injunction was properly issued by the

district court in order to enforce the arbitrator's award"); Alyeska Pipeline Service Co. v. IBT,

557 F.2d 1263, 1268 (9th Cir. 1977) (affirming TRO, preliminary injunction, and permanent

injunction enforcing arbitration award); PMA v. ILWU , 517 F.2d 1158, 1162-63 (9th Cir. 1975)

(confirming TRO and preliminary injunction to enforce coast arbitrator's award); ILWU Local 34

v. Cargill , 357 F. Supp. 608, 610 (N.D. Cal. 1973) (holding that federal courts have "jurisdiction

under § 301 of the LMRA to grant preliminary relief in a suit to enforce an arbitration award" and

ordering defendant to comply with terms of award).

     It is well-settled that, in an action to enforce a labor arbitration award, the court may not

review the merits of the award. See, United Steelworkers of America v. Enterprise Wheel & Car

Corp., 363 U.S. 593, 599, 80 S. Ct. 1358, 4 L. Ed. 2d 1424 (1960) (holding that the courts "have

no business overruling [the arbitrator] because their interpretation of the contract is different from

the arbitrator's"). The Ninth Circuit has repeatedly affirmed this broad standard of judicial

deference to a labor arbitrator's award:

     It is not the function of the courts to review the merits of arbitration awards. The

     interpretation of a collective bargaining agreement is a question for the arbitrator.

     It is the arbitrator's construction that was bargained for; and so far as the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

MEMORANDUM OF POINTS AND
AUTHORITIES

1    arbitrator's decision concerns construction of the contract, the courts have no

2    business overruling him, because their interpretation of the contract is different

3    than his.

4  San Francisco-Oakland Newspaper Guild v. Tribune Pub. Co., 407 F.2d, 1327, 1327 (9th Cir.

5  1969 (per curiam). "Deference is the rule; rare is the exception." Stead Motors of Walnut Creek

6  v. Automotive Machinists Lodge No. 1173, IAM, 886 F.2d 1200, 1209 (9th Cir. 1989).  See also

7  Sprewell v. Golden State Warriors, 266 F.3d 979, 986 (9th Cir. 2001) ("Judicial scrutiny of an

8  arbitrator's decision in a labor dispute is 'extremely limited.'")

9         The federal courts have applied this principle to disputes between the very same parties in

10  this action.  For example, in PMA v. ILWU, ILWU Local 19, 517 F.2d 1158, 1163 (9th Cir.

11  1975) and in PMA v. ILWU, 304 F.Supp. 1315, 1318 (N.D.Cal. 1969), the courts confirmed

12  arbitration awards of the PMA/ILWU Arbitrator, upon application by PMA.  The Ninth Circuit

13  affirmed the actions of each of the district courts.  See PMA w. ILWU, ILWU Local 19, 517 F.2d

14  at 1163 and PMA v. ILWU, 454 F.2d 262, 264 (9th Cir. 1971).  See also PMA v. ILWU Local

15  10, 1997 U.S. DIST. LEXIS 6017 (N.D.Cal. 1997) (granting PMA's motion to confirm Area

16  Arbitrator's award).

17        Given the nature of labor arbitration proceedings, and the manner in which arbitration

18  awards are issued, the written decision of the arbitrator is entitled to confirmation by the federal

19  district court even where that decision is not as detailed or precise as a district court's own

20  findings of facts and conclusions of law might be in a full trial.  As noted by the Ninth Circuit in

21  enforcing a labor arbitration award which was "somewhat cursory" and "nearly opaque," the

22  federal courts:

23        do not require labor arbitrators to make the sorts of explicit or exhaustive "findings

24        of fact" we demand of district courts; likewise, the reasons for arbitral rulings need

25        not be spelled out in detail.  Indeed, "arbitrators have no obligation ... to give their

26        reasons for an award" at all.

27  Stead Motors, 886 F.2d at 1203 (quoting Enterprise Wheel & Car Co., 363 U.S. at 598).  A "mere

28  ambiguity in the opinion accompanying an award" is not a basis for refusing to enforce the award.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MEMORANDUM OF POINTS AND
AUTHORITIES

1    Enterprise Wheel & Car Corp., 363 U.S. at 598.

2    **B.    Enforcement of the Area and Coast Arbitrators' Awards Requires Issuance**

3    **of a TRO Mandating Compliance.**

4    Federal labor policy promotes the issuance of court injunctions to stop and prevent work

5    stoppages and work delays that contravene a no-strike clause in a collective bargaining

6    agreement. Section 301, Labor Management Relations Act, 29 U.S.C. § 185; Boys Markets, Inc.

7    v. Retail Clerks Union, Local 770, 398 U.S. 235, 90 S. Ct. 1583, 26 L. Ed. 2d 199 (1970); Textile

8    Workers Union v. Lincoln Mills, 353 U.S. at 448, 77 S. Ct. at 912, 1 L. Ed. 2d at 972 (1957).

9    Where a binding arbitration award has been rendered finding that a work stoppage or delay

10    breaches the collective bargaining agreement, federal law supports the issuance of an order

11    confirming that arbitration award, and an injunction enforcing the arbitral decision. Buffalo Forge

12    Co. v. United Steelworkers, 428 U.S. 397, 405, 96 S. Ct. 3141, 3146-47, 49 L. Ed. 2d 1022, 1029

13    (1976); Alyeska Pipeline Serv. Co. v. International Bhd. of Teamsters, 557 F.2d 1263,1266-67

14    (9th Cir. 1979); San Francisco Elec. Contractors Ass'n v. International Bhd. of Elec. Workers,

15    577 F.2d 529, 532 (9th Cir.); PMA v. ILWU, 517 F.2d at 1162-63 (9th Cir. 1975); International

16    Longshoremen's & Warehousemen's Union, Local 34 v. Cargill, Inc., 357 F. Supp. 608, 609-10

17    (N.D. Cal. 1973).

18    In Alyeska Pipeline, Alyeska, a consortium of eight oil company-employers had a

19    collective bargaining agreement with the Unions building the Alaska pipeline. After a dispute

20    arose over picketing by one of the Unions, Alyeska took the matter to arbitration under the

21    contract. The arbitrator ruled in favor or Alyeska, and Alyeksa then requested that the federal

22    court issue a TRO enforcing the arbitrator's award. 557 F.2d at 265-66. The district court issued

23    the TRO, and later issued a preliminary injunction and then a permanent injunction, enforcing the

24    arbitrator's award. Despite the Union's insistence that a federal court could not and should not

25    issue an injunction requiring enforcing an arbitrator's award, especially where that award

26    prohibited certain concerted activity by the members of the Union (picketing), the Ninth Circuit

27    affirmed. Id. at 1266-67.

28    As noted at the outset of this Memorandum, the procedural order of (1) issuance by the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

1  labor arbitrator of an arbitration award, (2) federal court confirmation of the award, (3) TRO

2  enforcing the award, and (4) preliminary injunction enforcing the award was followed by the

3  federal court in PMA v. ILWU, 517 F.2d. 1158 (9th Cir. 1975).  There, the same collective

4  bargaining agreement language, and the same parties, had a labor dispute which was presented to

5  the Arbitrator as the final and binding word on the issue.  The Arbitrator rendered his decision,

6  and the prevailing party (PMA) requested and received federal district court confirmation of the

7  award, issuance of a TRO enforcing the award, and issuance of a preliminary injunction enforcing

8  the award.  The Ninth Circuit carefully considered the Union's procedural and substantive

9  challenges to that result, rejected each of them, and affirmed the district court's decision.

10  Similarly, when a group of ILWU Local 13 crane operators in February 2000 engaged in a work

11  slowdown, and PMA took the issue to the Arbitrator, and the Arbitrator ruled in PMA's favor,

12  PMA then filed a motion to confirm the arbitration award and for injunctive relief.  PMA v.

13  ILWU Local 13, U.S. District Court, Central District of California Case No. 00-01641.  The

14  Honorable Nora M. Manella three days later issued a Temporary Restraining Order against ILWU

15  Local 13 and its officers and members restraining them pending the hearing on the Order to Show

16  Cause re Preliminary Injunction from "participating in or permitting any work stoppage,

17  slowdown, walkout or other conduct in violation of the Kagel Arbitration Award, C-01-00."  The

18  Court then set the matter for a preliminary Injunction Hearing and, after that hearing, issued an

19  Order Granting Preliminary Injunction.

20        Similarly, in San Francisco Electric Contractors Ass'n, the Ninth Circuit considered a

21  district court's decision to issue a preliminary injunction to prevent a union from engaging in a

22  work stoppage.  577 F.2d at 530.  The union appealed the district court's decision, arguing that

23  the injunction violated the Norris-LaGuardia Act.  Id.  The employers/appellees responded that the

24  injunction merely served to enforce an arbitrator's award, which was issued following binding

25  arbitration pursuant to a collective bargaining agreement.  Id.  Thus, the employers claimed, the

26  injunction acted as an "implementation of the arbitration process" and fell within an exception to

27  Norris-LaGuardia.  Id.  The Ninth Circuit agreed, noting that "it had, since 1960, been recognized

28  that an arbitrator's decision that a strike was in violation of a contract and his order to cease and

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

1  desist were subject to judicial enforcement by injunction." Id. at 532. The court continued,

2  "Most recently the proposition was recognized in Buffalo Forge ..." Id. The court further

3  determined "In our judgment Boys Markets cannot sensibly be construed not to cover the union's

4  obligation to abide by the arbitrator's decision. If the process can be frustrated by such refusal,

5  submission to arbitration would be meaningless." Id. at 533. Therefore, the court concluded,

6  "the preliminary injunction was properly issued by the district court in order to enforce the

7  arbitrator's award." Id. at 534.

8       As a further example, in Cargill, the district court considered the union's claim that the

9  court did not have jurisdiction to grant preliminary relief. 357 F. Supp. at 609. The court noted

10 that the "precise question of whether an arbitration award may be enforced by preliminary

11 injunction was before the court" in a case pending before the district court in Nebraska. The

12 court there held that "it had the power to issue a mandatory injunction 'as a means to compel

13 defendants to honor the decision of the Joint Board, thereby specifically enforcing the agreement

14 entered into by the parties to so abide by said decision.'" Id. at 609-10 (quoting Bricklayers,

15 Masons, Marble and Tile Setters, Protective and Benevolent Union No. 7 v. Lueder Construction

16 Co., 346 F. Supp. 558, 563 (D. Neb. 1972)). The Cargill court agreed, holding that it had

17 "jurisdiction under § 301 of the LMRA to grant preliminary relief in a suit to enforce an

18 arbitration award." Id. at 610. Similarly, where employees engaged in a concerted refusal to

19 work overtime, the matter was held to be covered by the arbitration clause of the parties' CBA

20 and subject to issuance of an injunction enjoining union from encouraging members to refuse

21 overtime work. Avco Corp. v. Local Union #787, UAW, 459 F.2d 968, 973-74 (3d Cir. 1972).

22      Thus, federal labor law favors enforcement of arbitration awards, and it is wholly

23 appropriate for this Court to issue an Order not only confirming the arbitration award, but also

24 issuing a TRO and then a preliminary injunction requiring immediate compliance with that

25 award. The duty of the court in which an action under Section 301 has been commenced is to

26 apply the substantive federal common law that has developed under Section 301 in order to

27 effectuate the policies of the federal labor laws. Textile Workers Union v. Lincoln Mills, 353

28 U.S. at 450-51, 455-57, 77 S. Ct. at 914-15, 917-18, 1 L. Ed. 2d at 977-78, 980-81 (1957). A

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

1  primary object of the United States labor laws is to secure peaceful settlements of labor disputes

2  by resort to the collective bargaining process.  The existence of a "no strike" provision in a

3  collective bargaining agreement, when joined with contract grievance machinery, materially

4  furthers this policy and in fact constitutes the central instrument in the maintenance of labor

5  relations under the collective bargaining agreement.  Enforcement of such provisions was a

6  primary purpose of Congress in enacting Section 301.  Boys Markets Inc., 398 U.S. at 242-43,

7  248; Cargill, 357 F. Supp. at 610.  An injunction thus is appropriate to prevent the violation of an

8  arbitration award.

9        As but one more example, in another case involving these same parties under the same

10  collective bargaining agreement arbitration procedure, PMA v. ILWU, the Arbitrator rendered a

11  decision resolving a dispute over whether certain strike activity was in breach of the contract.

12  304 F. Supp. at 1322.  The Arbitrator found that it was, and PMA moved in federal district court

13  to enforce the arbitration award.  That request was granted.  Id. at 1326.  PMA also requested that

14  the federal district court issue an injunction ordering that the arbitration award be enforced; that

15  request was also granted.  Id.  PMA also requested that a permanent injunction issue, enforcing

16  the award.  The district court also granted that request.  Id.  On appeal, the Ninth Circuit held that

17  the district court had jurisdiction to enter its permanent injunction (the Ninth Circuit affirmed as

18  to that order, and remanded as to certain other issues which had been before the district court).

19  PMA v. ILWU, 454 F.2d. at 264.[1]

20

21

22

23

---

24  [1]    The Defendants may argue that, pursuant to Northern Stevedoring & Handling Corp. v. ILWU,
685 F.2d 344 (9th Cir. 1982), the Norris-LaGuardia Act, 29 U.S.C. Section 101 et seq., requires a full
25  evidentiary hearing prior to issuing a TRO on the award.  However, that statute specifically provides that,
if necessary to avoid "substantial and irreparable injury" to the plaintiff, the court may issue a TRO on
26  written affidavits alone. 29 U.S.C. § 107.  Even if this Court nevertheless feels that an evidentiary hearing
is required, any hearing should be conducted immediately to prevent irreparable economic loss to PMA's
27  members.  PMA is prepared to examine its witnesses immediately.  PMA sses no reason why the ILWU
would be unable to produce its witnesses immediately, as well.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

MEMORANDUM OF POINTS AND
AUTHORITIES

IV.    **AN INJUNCTION IS APPROPRIATE BECAUSE AN ILLEGAL WORK STOPPAGE IS ONGOING AND THE BALANCE OF EQUITIES STRONGLY FAVORS PMA AND THE EMPLOYERS**

The arbitration award now before the Court can and should be enforced on its own, and an injunction enforcing the awards is wholly appropriate, as detailed above. The traditional injunction factors simply compel the same result. The Ninth Circuit has held that an injunction may issue where there is a clear showing of either (1) probable success on the merits and possible irreparable injury, or (2) sufficiently serious questions going to the merits to make them fair ground for litigation and the balance of hardships leans decidedly toward the party requesting the preliminary relief. Arcamuzi v. Continental Airlines, Inc., 819 F.2d 935, 937 (9th Cir. 1987); see also Aguirre v. Chula Vista Sanitary Service, 542 F.2d 779, 781 (9th Cir. 1976) (quoting Gresham v. Chambers, 501 F.2d 687, 691 (2d Cir. 1974)).

The Supreme Court made clear in Boys Markets that when frustration of the public interest by violation of a no strike provision and contract grievance machinery is coupled with financial loss to management, irreparable injury has occurred and injunctive relief is appropriate. 398 U.S. at 248 & n. 17. Accord Campbell "66" Express, Inc. v. Rundel, 597 F.2d 125, 128 (8th Cir. 1977); New York Telephone Co. v. Communications Workers, 445 F.2d 39, 42-43 (2d Cir. 1971); General Building Contractors Ass'n v. Local Union 642, International Union of Operating Engineers, 371 F. Supp. 1130, 1136 (E.D. Pa. 1974). A temporary restraining order should issue ex parte, without oral testimony, when a person aggrieved by a probable breach of a collective bargaining agreement is exposed thereby to substantial and irreparable damage. 29 U.S.C. § 107(e); Boys Markets, Inc., 398 U.S. at 252-53, 90 S. Ct. at 1593-94, 26 L. Ed. 2d at 211-12; Celotex Corp. v. Oil, Chemical & Atomic Workers Int'l Union, 516 F.2d 242, 247-48 (3d Cir. 1975); Chief Freight Lines Co. v. Local Union No. 886, 514 F.2d 572, 575 (10th Cir. 1975); New York Telephone Co. v. Communications Workers, 445 F.2d 39, 42-43 (2d Cir. 1971).

It is also well-settled that injunctive relief is proper when the behavior of the Union indicates that further noncompliance with the arbitration provisions of the collective bargaining agreement is likely. Westmoreland Coal Co. v. International Union, United Mineworkers, 910

1    F.2d 130, 137 (4th Cir. 1990). Previous conduct by the Union indicating a flagrant disregard for

2    its arbitration obligations may be relied upon to show that the Union is likely to commit future

3    breaches. Id. at 138. Simply because the Union has ceased the improper conduct, or has not yet

4    actually engaged in it, does not make a request for injunctive relief moot or premature: "If there

5    is a reasonable apprehension that the misconduct will recur, a hearing to determine the

6    appropriateness of future injunctive relief is proper." Donovan Constr. Co. v. Constr. Prod. &

7    Maint. Laborers Union, 533 F.2d 481, 484 (9th Cir. 1976).

8        Here, the ILWU has utterly ignored its contractual obligations (i.e. the no-strike and no-

9    work stoppage clause). The ILWU's illegal work stoppage must be enjoined so that PMA and its

10    members can enjoy the benefit of the bargain they struck when the ILWU agreed to the no-strike

11    and arbitration provisions.

12        Several other factors demonstrate that injunctive relief is warranted. First, the ILWU's

13    conduct is knowingly improper. The ILWU knows its obligations under the PCLCA to not

14    engage in work stoppages and to observe all arbitration awards, yet it is blatantly ignoring those

15    obligations. Second, the ILWU failed to comply with the PCLCA even after the Arbitrator

16    specifically ordered it to do so.

17        Third, due to the unique nature of the ports and the industry, a work stoppage causes real

18    havoc and damage to PMA's members, their customers, and numerous other parties who depend

19    on the timely flow of goods in and out of the ports. The monetary damages to PMA's members,

20    although difficult to measure, are estimated to be between $15,000 and $200,000 per vessel for

21    each eight-hour shift the vessel is delayed. Additionally, the members' good will, public

22    relations, and competitive position in the industry are severely impacted by delays and the

23    inability to meet promised deadlines for shipments. See Otis Elevator v. Local 1, Int'l Union of

24    Elevator Constructors, 684 F.Supp. 80, 83 (S.D.N.Y. 1988) (when work stoppage is likely to lead

25    to loss of goodwill and a permanent loss of business, irreparable harm justifying injunction is

26    shown).

27        Much of the damage suffered by PMA's members (such as loss of goodwill and the

28    various harms caused by delay) is not readily capable of monetary computation. Irreparable

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

injury is found where the damages are difficult or impossible to quantify. See U-Haul Int'l Inc. v. Jartran Inc., 522 F. Supp. 1238 (1981), aff'd, 681 F.2d 1159 (9th Cir. 1982) (irreparable injury found when it is impossible to measure the exact amount of the party's damages); Paulsen v. County of Nassau, 925 F.2d 65, 68 (2nd Cir. 1991) ("[I]mproper conduct for which monetary remedies cannot provide adequate compensation suffices to establish irreparable harm."); Allied Marketing Group, Inc. v. CDL Marketing, Inc., 878 F.2d 806, 810 n.1 (5th Cir. 1989) ("[A] finding of irreparable harm is appropriate even where economic rights are involved when the nature of those rights makes 'establishment of the dollar value of the loss ... especially difficult or speculative.'").

Finally, the balance of the equities in this case clearly favors PMA and its members. Greater injury will be inflicted on PMA and its members by the denial of relief than will be inflicted upon Defendants by the granting of relief since they are only being requested to abide by the collective bargaining agreement and the arbitration awards issued pursuant to that agreement. A work stoppage and delay will result in irreparable harm to PMA's members by jeopardizing their relations with its customers, causing them to lose potential business, and causing tremendous monetary damages which are difficult if not impossible to quantify. The public will also be harmed by the delay in the shipment of goods. See Chalk v. U.S. Dist. Court, 840 F.2d 701, 711 (9th Cir. 1988) (public interest is one of the traditional criteria a court should consider in granting injunctive relief). Conversely, the issuance of injunctive relief would work no harm at all on the ILWU. It simply would be required to keep its promise to abide by the no-strike and no work-stoppage clauses of the PCLCA, and with the Arbitrator's Award ordering compliance with those provisions. See Otis Elevator, 684 F.Supp. at 83 (balance tips decidedly in plaintiff's favor because "[a]ll the court is requiring the Union to do is execute its contractual obligation not to strike, and to arbitrate the disputes").

## V.    THE ILWU IS RESPONSIBLE FOR THE ILLEGAL WORK STOPPAGE BECAUSE IT HAS CONDONED AND ENCOURAGED SUCH ACTION

A union is bound by the acts of its members not only where it expressly authorizes or ratifies those acts but also where it encourages or condones them, directly or indirectly. 29

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

MEMORANDUM OF POINTS AND
AUTHORITIES

U.S.C. §§ 185(b), 185(e); United States Steel Corp. v. UMW, 519 F.2d 1249, 1253 (5th Cir. 1975); Vulcan Materials Co. v. United Steelworkers, 430 F.2d 446, 457 (5th Cir. 1970). Encouragement need not be explicit to result in union liability:

> Strike encouragement sometimes is explicit, but more often is cryptic. A union may employ subtle signals to convey the message to strike. One court noted that unions sometimes employed "a nod or a wink or a code . . . in place of the word 'strike'."

Complete Auto Transit, Inc. v. Reis, 451 U.S. 401, 418 n.1, 101 S. Ct. 1836, 1846 n.1, 68 L. Ed. 2d 248 n.1 (1981) (Powell, J. concurring in part and dissenting in part); Seattle Times Co. v. Seattle Mailers' Union, 664 F.2d 1366, 1369 (9th Cir. 1982). A union is responsible for unlawful strike activity that, contrary to its contract obligations, it does not take effective steps to prevent. Consolidation Coal Co. v. Local 1702 UMW, 709 F.2d 882, 885-86 (4th Cir. 1983). This is particularly so when there has been a pattern of strike activity that is plainly unlawful under the contract. United States Steel Corp. v. UMW, 519 F.2d at 1256.

Here, the Coast Arbitrator found, after a full hearing, that the ILWU violated several provisions of the PCLCA and that it would continue to violate those provisions unless it immediately undertook the specific actions ordered by the Arbitrator. The ILWU must do more than just assert that it is up to its members to decide whether they will comply. It is disingenuous for the ILWU to claim that it cannot, or need not, do more: the following language from the PMA v. ILWU decision of the Ninth Circuit is directly on point:

> Appellants [the International Union and one of the Locals] next contend that the Kagel decision is too vague to be susceptible of enforcement in that it does not tell the unions what they must do or must not do.... We agree with PMA that ... the unions do not need to be told by anyone how to go about the business of securing observance from their members....
>
> ***
>
> The unions by contract have assumed the responsibility for securing necessary action by their members and ... need no instruction from the court on such matters.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

MEMORANDUM OF POINTS AND
AUTHORITIES

517 F.2d at 1161, 1162. The ILWU and its members have the full ability to obtain compliance with the awards at issue; they just need an Order from this Court directing them to do so.

## VI.    CONCLUSION

For all of the foregoing reasons, PMA respectfully requests that this Court (1) confirm and enforce the Coast Arbitrator's Award, (2) issue a TRO requiring that the ILWU and its members immediately comply with the Award, and (3) set a preliminary injunction hearing.

Dated:  April 30, 2008

MORGAN, LEWIS & BOCKIUS LLP

By _____
Brendan Dolan
Attorneys for Plaintiff
PACIFIC MARITIME ASSOCIATION.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MEMORANDUM OF POINTS AND
AUTHORITIES