ROBERT S. REMAR (SBN 100124)
PHIL A THOMAS (SBN 248517)
LEONARD CARDER, LLP
1188 Franklin Street, Suite 201
San Francisco, California 94109
Telephone: 415-771-6400
Facsimile: 415-771-7010
rremar@leonardcarder.com
pthomas@leonardcarder.com

Attorneys for Defendants
INTERNATIONAL LONGSHORE
AND WAREHOUSE UNION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC MARITIME ASSOCIATION, a California corporation;<br><br>Plaintiffs,<br><br>v.<br><br>INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, an unincorporated labor organization.<br><br>Defendants. | Case No. CV-08-2244-CW<br><br>**OPPOSITION TO PACIFIC MARITIME ASSOCIATION'S MOTION FOR CONFIRMATION OF LABOR ARBITRATION AWARDS** |

## INTRODUCTION

Plaintiff PMA commenced this action on April 30, 2008, seeking to confirm two

arbitration awards issued that same day by Coast Arbitrator John Kagel. PMA also sought a

temporary restraining order to prevent Defendant ILWU from conducting what PMA claimed

LEONARD CARDER, LLP
ATTORNEYS
1188 FRANKLIN STREET, SUITE 201
SAN FRANCISCO, CALIFORNIA 94109
TELEPHONE: (415) 771-6400    FAX (415) 771-7010

would be an "illegal work stoppage" on May 1.[1]  This Court took PMA's application for a TRO

under submission; no hearing was held and PMA withdrew the application on May 2.

PMA presently moves for confirmation of the Coast Arbitrator's April 30 awards.  ILWU

has no objection to confirmation of these awards.  However, PMA's motion also goes beyond

this request for confirmation, and seeks to litigate issues that are either moot or beyond the

scope of the arbitration awards at issue, in effect seeking to obtain an advisory opinion where

there is no live controversy.  ILWU requests that this Court dismiss these additional issues as

moot and/or beyond the Court's jurisdiction and authority.

## STATEMENT OF FACTS

I.      **Parties to this Action**

Plaintiff PMA is an association of shipping lines, and stevedoring and marine terminal

companies which operate in ports throughout California, Oregon and Washington.  (McEllrath

Decl. ¶2).  PMA serves as the collective bargaining and payroll agent for its member

companies.  (Id.).  Defendant ILWU is the collective bargaining representative of all longshore

workers employed by PMA-member companies in the ports of California, Oregon and

Washington.  (McEllrath Decl. ¶3).

II.     **The Applicable Collective Bargaining Agreement**

The wages, hours, and terms and conditions of employment for ILWU-represented

longshore workers employed by PMA-member companies are governed by a coast-wide

collective bargaining agreement known as the Pacific Coast Longshore Contract Document

("PCLCD"), which is in effect through July 1, 2008.[2]  (McEllrath Decl. ¶4).

---

[1] All dates are 2008 unless otherwise indicated.
[2] The full agreement between the parties is known as the Pacific Coast Longshore and Clerks Agreement,
("PCL&CA"), and is set forth in two documents, the Pacific Coast Clerks Contract Document ("PCCCD"), which
governs the terms and conditions of employment for marine clerks, and the Pacific Coast Longshore Contract

LEONARD CARDER, LLP
ATTORNEYS
1188 FRANKLIN STREET, SUITE 201
SAN FRANCISCO, CALIFORNIA 94109
TELEPHONE: (415) 771-6400    FAX (415) 771-7010

Section 9.3 of the PCLCD obligates the Union to supply "[c]ompetent men with adequate experience or training … for all tools and equipment to be operated by longshoremen." (McEllrath Decl. ¶6). Section 9.31 permits the Joint Port Labor Relations Committees to "provide for the availability of the necessary men when there are not sufficient such competent longshoremen available." (Id.). Section 8.51 requires each dispatching hall to "furnish on any day required up to at least the agreed to number of gangs and supporting men[.]" (Id.). Nothing in the PCLCD requires any particular longshore worker to report for work on any particular day. (McEllrath Decl. ¶7). Section 11.1 of the PCLCD provides that "there shall be no strike, lockout, or work stoppage for the life of this Agreement." (McEllrath Decl. ¶8). Under Section 12.31 of the PCLCA, each local union has the right to hold one "regularly scheduled a stop-work meeting each month during overtime hours on the second shift." (Id.). Under Section 12.32, this meeting can be rescheduled by mutual agreement of the PMA and ILWU. (Id.).

Section 17 of the PCLCD sets forth the procedures to be used in resolving disputes. (McEllrath Decl. ¶9). The contractual grievance procedure is the exclusive remedy for anyone claiming a violation of the PCLCD:

> **17.15** The grievance procedure of this Agreement shall be the exclusive remedy with respect to any disputes arising between the Union or any person working under this Agreement or both, on the one hand, and the association or any employer acting under this Agreement, or both, and no other remedies shall be utilized by any person with respect to any dispute involving this Agreement until the grievance procedure has been exhausted.

The grievance procedure has several steps and attempts to resolve disputes at the lowest possible level. (McEllrath Decl. ¶10). The final step in the procedure is a hearing before the

Document ("PCLCD"), which governs the terms and conditions of employment for longshore workers. (McEllrath Decl. ¶5, Exh. A). The relevant provisions of both the PCLCD and the PCCCD are identical. (Id.). For simplicity, "PCLCD" will be used to refer to the collective bargaining agreement applicable to this instant case.

LEONARD CARDER, LLP
ATTORNEYS
1188 FRANKLIN STREET, SUITE 201
SAN FRANCISCO, CALIFORNIA 94109
TELEPHONE: (415) 771-6400     FAX (415) 771-7010

OPPOSITION TO PACIFIC MARITIME ASSOCIATION'S MOTION FOR
CONFIRMATION OF LABOR ARBITRATION AWARDS



Coast Arbitrator. (Id.). Under Section 17.55, all decisions of the Coast Arbitrator are final and

binding on all parties. (Id.). Under Section 17.57, all decisions of the Coast Arbitrator must be

observed and/or implemented. (Id.).

### III.    PMA Denies ILWU's Request to Move "Stop-Work" Meetings to May 1; ILWU Agrees Not To Change Scheduled Meeting Times and Dates

In the past, PMA has generally agreed to allow the ILWU to change its monthly one-

shift, "stop-work" meeting when a timely request is made. (McEllrath Decl. ¶11). For

example, in 1999, PMA allowed ILWU to change the date of its April "stop-work" meeting so

that Union members could participate in rallies opposing the expected execution of death row

inmate Mumia Abu-Jamal, who is widely believed to have been wrongly convicted of killing a

police officer. (Id.). In agreeing to the change, Phil Resch, Senior Vice President of

Operations for PMA, stated:

> The ILWU uses these meetings to conduct union business and to communicate
> with their members. ... How the ILWU chooses to use this meeting time is up to
> their discretion. When a request to change the date is made in advance and
> agreed upon by our members, there is little, if any, impact on the maritime
> industry.

(Id., Exh. B).

At the ILWU Longshore Division Caucus, held from January 28 to February 8, the

delegates adopted a resolution to move the May stop-work meeting to the day shift on May 1 in

order to allow longshore workers to express their opposition to the war in Iraq. (McEllrath

Decl. ¶12). In early March, various Longshore Division locals informed PMA that they would

be moving the May stop-work meeting to the day shift of May 1. (McEllrath Decl. ¶13, Exh

.C). PMA refused to agree to this change, (McEllrath Decl. ¶14, 15, Exh. D, E), and the Union

informed PMA that all requests to change the schedule were retracted. (McEllrath Decl. ¶16,

Exh. F). ILWU did, however, recommended to PMA that its member companies "take into

LEONARD CARDER, LLP
ATTORNEYS
1188 FRANKLIN STREET, SUITE 201
SAN FRANCISCO, CALIFORNIA 94109
TELEPHONE: (415) 771-6400    FAX (415) 771-7010

consideration as they plan May 1 operations that manpower may be limited as members

exercise their right to express themselves politically." (McEllrath Decl. ¶17 Exh. G).

## IV.    The Coast Arbitrator's April 24 and April 30 Awards

PMA waited until April 23 to raise the issue of a possible work stoppage on May 1 at a

meeting of the Joint Coast LRC. (McEllrath Decl. ¶18). The JCLRC did not reach agreement

as to whether any work stoppage was likely or whether any action should be taken by either

party. (Id.) On April 24 the PMA raised the same issue before the Coast Arbitrator.

(McEllrath Decl. ¶19). The Coast Arbitrator's order reads in relevant part:

BENCH DECISION AND ORDER OF THE COAST ARBITRATOR

There is an obligation under Section 12.2 of the Agreement for the Union to
inform members of their responsibility under the Agreement. When the Union
took an action which might have led some members to believe that they had no
obligation to report as normal, whether a reality or not, it seems to me the Union
had to go one step further and tell the members, without affecting their political
decisions, that the ports are open, the Agreement applies, and they are expected
to do whatever it is they are required to do under the Agreement.

I am not going to direct how the Union does that at this point, because it seems
to me that is none of my business. And it is none of the Employers; business,
unless they have some more.

(Id., Exhibit H).

Immediately thereafter, ILWU officers notified the Longshore Division Negotiating

Committee of the Coast Arbitrator's April 24 decision. (McEllrath Decl. ¶20). ILWU officers

instructed the Committee members to inform their local unions of the Coast Arbitrator's Award

and of the necessity of complying with it. (Id.). On April 30 PMA returned to the Coast

Arbitrator, claiming that ILWU was not in compliance with the April 24 award. (McEllrath

Decl. ¶21). The Coast Arbitrator found that "Union efforts, to comply with the order of April

LEONARD CARDER, LLP
ATTORNEYS
1188 FRANKLIN STREET, SUITE 201
SAN FRANCISCO, CALIFORNIA 94109
TELEPHONE: (415) 771-6400    FAX (415) 771-7010

24, 2008, based on sufficient evidence, [were] ineffective." (Id.). At approximately 10:15 a.m. the Coast Arbitrator granted the following motions:

1.  The Union has not effectively complied with the April 24, 2008 ruling, in violation of Section 17.57.

2.  Any deliberate and/or concerted action of directing Longshoremen, Clerks and others that they are not to work, or that they are not working, on May 1, 2008 is a violation of Sections 11.1, and 11.2 of the PCLCD and PCCCD.

3.  There shall be no unilateral concerted job action or illegal work stoppage in violation of the Agreement during the May 1, 2008 day shift.

4.  The Union shall take immediate and affirmative steps to notify its Locals and members of their contractual obligation and direct all members to report to work as they normally do during the day shift on May 1, 2008.

(Id., Exhibit I).

PMA returned to the Coast Arbitrator later that day and presented additional evidence. At 3:15 p.m., the Coast Arbitrator found that "the evidence showed the Union, its Officers and members to be in violation" of the award he issued at 10:15 that morning. (McEllrath Decl. ¶22, Exhibit J).

## V. **The Events of May 1, 2008**

On May 1, demonstrations against the war in Iraq were held in many cities; ILWU members participated in many of these demonstrations. (McEllrath Decl. ¶23). Dispatch halls were open, and accepted orders for labor from PMA-member employers. (Id.). Few, if any, longshore workers showed up at the dispatch halls during the day shift on May 1, and these orders could not be filled. (Id.). Longshore workers returned to the dispatch halls on the second shift, and industry operations returned to normal.[3] (Id.).

---

[3] These facts may be disputed by PMA. However, the events of May 1 are not material to the determination of whether the Coast Arbitrator's April 30 awards should be confirmed. As argued below, the question of whether any of the events of May 1 constitute a violation of the PCLCD is a determination that only the Coast Arbitrator can make, and PMA has not sought such a determination.

LEONARD CARDER, LLP
ATTORNEYS
1188 FRANKLIN STREET, SUITE 201
SAN FRANCISCO, CALIFORNIA 94109
TELEPHONE: (415) 771-6400    FAX (415) 771-7010

OPPOSITION TO PACIFIC MARITIME ASSOCIATION'S MOTION FOR
CONFIRMATION OF LABOR ARBITRATION AWARDS



Since May 1, PMA has not returned to the Coast Arbitrator for a determination of whether any of the events of May 1 constituted a violation of the PCLCD and/or any of the Coast Arbitrator's decisions. (McEllrath Decl. ¶24). PMA has taken no action to discipline any ILWU-represented longshore worker who did not report for work on May 1. (Id.).

## ARGUMENT

PMA's motion seeks to litigate issues that are either moot or far beyond the scope of the arbitration awards at issue. Defendant ILWU has no objection to confirmation of the April 30 awards, but PMA's attempt to litigate the constitutionality of its now-withdrawn request for a temporary restraining order must be dismissed. These issues are not properly before the Court; any ruling on them would constitute an advisory opinion in violation of the case or controversy requirement of Article III of the United States Constitution.

## I.  PMA Has Failed To Exhaust Its Internal Remedies For Alleged Violations of the Coast Arbitrator's Awards

PMA's moving papers contain extensive allegations regarding the events of May 1, none of which are relevant to the confirmation of the Coast Arbitrator's April 30 awards. As PMA is well aware, Section 17.15 of the PCLCD provides that the grievance procedure set forth in the PCLCD is the exclusive remedy for any disputes arising under it, and "no other remedies shall be utilized by any person with respect to any dispute involving this Agreement until the grievance procedure has been exhausted." The Coast Arbitrator thus has exclusive jurisdiction to determine whether the events of May 1 constitute a violation of the PCLCD and/or any arbitration award issued under it.

On April 30, the Coast Arbitrator ordered that "[t]here shall be no unilateral concerted job action or illegal work stoppage in violation of the Agreement during the May 1, 2008 day shift," but he has made no finding regarding whether any of the events of May 1 constituted

LEONARD CARDER, LLP
ATTORNEYS
1188 FRANKLIN STREET, SUITE 201
SAN FRANCISCO, CALIFORNIA 94109
TELEPHONE: (415) 771-6400    FAX (415) 771-7010



7

such a violation. Indeed, he can make no such finding unless and until PMA takes the issue to

him. It is not for this Court to determine whether there was indeed a "unilateral concerted job

action or illegal work stoppage in violation of the Agreement during the May 1, 2008 day

shift." That determination can be made only by the Coast Arbitrator, who has not been asked

to do so. Any such finding by a court "is necessarily speculative when the arbitrator has yet to

rule." *SEIU Local 250 v. Marshall Hale Mem. Hosp.*, 647 F.2d 38, 42 (9th Cir. 1981). By the

express terms of Section 17.15 of the PCLCD, PMA has waived any right it might have to seek

from this Court a determination that ILWU violated the PCLCD on May 1.

     Cases cited by PMA are distinguishable, in that in each case the arbitrator found that a

work stoppage or slowdown <u>had already occurred</u>, in violation of the PCLCD. In no case cited

by PMA, and in no case of which ILWU is aware, has a court found a violation of the PCLCD

based on a purely prospective arbitration award. In *PMA v. ILWU*, 304 F.Supp. 1315 (N.D.

Cal. 1969), the Coast Arbitrator found that a work stoppage had occurred in violation of the

PCLCD. Similarly, in *PMA v. ILWU* 517 F.2d 1158 (9th Cir. 1975), the Coast Arbitrator found

that a work slowdown had occurred in violation of the PLCLD. In *PMA v. ILWU,* Case No.

3:06-cv-06148-WHA (N.D.Cal. 2007), the Coast Arbitrator found that longshore workers had

continued to leave work early in violation of an Area Arbitrator's award; ILWU stipulated to

the award at issue. In *PMA v. ILWU Local 10,* 1997 U.S. Dist. LEXIS 6017 (N.D.Cal. 1997),

an Area Arbitrator found that a work stoppage had occurred in violation of the PCLCD.[4]

     One case cited by PMA is however directly on point. In *PMA v. ILWU,* Case No. 3:07-

cv-04618-CRB (N.D.Cal. 2008), ILWU twice stipulated to the arbitration awards at issue, but

PMA persisted in demanding relief from the court beyond that awarded by the arbitrator. The

---

[4] Significantly, in this case PMA declined to seek any relief beyond the express terms of the arbitration award.

OPPOSITION TO PACIFIC MARITIME ASSOCIATION'S MOTION FOR
CONFIRMATION OF LABOR ARBITRATION AWARDS

LEONARD CARDER, LLP
ATTORNEYS
1188 FRANKLIN STREET, SUITE 201
SAN FRANCISCO, CALIFORNIA 94109
TELEPHONE: (415) 771-6400    FAX (415) 771-7010

court declined to award such relief, and PMA eventually withdrew its request.  Accordingly, all of PMA's allegations regarding the events of May 1, 2008 and beyond must be dismissed because of PMA's failure to exhaust its remedies under the PCLCD.

## II.    The Norris-LaGuardia Act Bars This Court From Awarding Relief Not Awarded By The Coast Arbitrator

In enacting the Norris-LaGuardia Act, 29 U.S.C. § 101 *et seq.*, **"Congress was intent upon taking the federal courts out of the labor injunction business,** except in … very limited circumstances[.]" *Jacksonville Bulk Terminals, Inc. v. ILA.*, 457 U.S. 702, 712 (1982) (emphasis in original).  The only relevant exception permits enforcement by injunction of an arbitrator's ruling that conduct is in violation of the no-strike clause in an applicable collective bargaining agreement.  *Northern Stevedoring and Handling Corp. v. ILWU, Local 60*, 685 F.2d 344, 347 (9th Cir. 1982); *Alyeska Pipeline Serv. Co. v. IBT*, 557 F.2d 529, 532 (9th Cir. 1979).  ILWU agrees that the Court has jurisdiction to enforce by injunction the Coast Arbitrator's awards, which are final and binding on the parties.  *See Gen. Drivers, Warehouseman & Helpers, Local Union No. 89 v. Riss & Co., Inc.,* 372 U.S. 517-519-20 (1963); *Northern Stevedoring*, 685 F.2d 344, 347-49.  ILWU has no objection to confirmation of these awards, but opposes PMA's attempt to obtain additional relief not awarded by the Coast Arbitrator.

The exception to the Norris-LaGuardia Act for injunctions to enforce arbitration awards exists to further the strong federal policy of supporting and enforcing parties' commitments to be bound by the private dispute settlement mechanisms agreed to in a collective bargaining agreement.  *See, e.g., United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599 (1960).  As the Supreme Court has explained, the parties have "'bargained for' the 'arbitrator's construction of their agreement." *Eastern Associated Coal Corp. v. United Mine Workers of America, Dist.,* 531 U.S. 57, 61 (2000) (quoting *Enterprise Wheel*, 363 U.S. at

599); *accord Paperworkers v. Misco*, 484 U.S. 29, 37-38 (1987). Thus, "as long an arbitrator is

even arguably construing or applying the contract and acting within the scope of his authority,"

the fact that "a court is convinced he committed serious error does not suffice to overturn his

decision." *Enterprise Wheel, supra.* at 599. A court is, therefore, powerless to grant any relief

beyond that awarded by the arbitrator. *Id.*

PMA and ILWU have bargained for the Coast Arbitrator's determination of whether the

PCLCD has been violated. It follows that in confirming and enforcing the Coast Arbitration

awards here, this Court is prohibited from awarding any relief that the Coast Arbitrator

declined to award. It is a matter of long-standing labor law and policy that the courts are

prohibited from usurping the functions properly entrusted to the arbitrator chosen by the parties

to resolve their contractual disputes, including determining what remedies are appropriate when

a violation of a collective bargaining agreement is found. *United Steelworkers of American v.*

*American Manufacturing Co.*, 363 U.S. 564, 569 (1960); *Enterprise Wheel, supra* at 596-97,

599 ("the question of interpretation of the collective bargaining agreement is a question for the

arbitrator"); *Buffalo Forge Co. v. United Steelworkers of America*, 428 U.S. 397, 412 (1976)

("[i]t is incredible to believe that the courts would always view the facts and the contract as the

arbitrator would; and it is difficult to believe that the arbitrator would not be heavily influenced

or wholly preempted by judicial views of the facts and the meaning of the contracts if this

procedure is to be permitted.")

Ignoring this vast body of law, PMA has come to Court seeking not only a confirmation

of the Coast Arbitrator's April 30 awards, but also a determination that ILWU violated these

awards on May 1. As shown in Section I above, the Coast Arbitrator has issued no findings

regarding whether the events of May 1, 2008 constituted a violation of the PCLCD or his

LEONARD CARDER, LLP
ATTORNEYS
1188 FRANKLIN STREET, SUITE 201
SAN FRANCISCO, CALIFORNIA 94109
TELEPHONE: (415) 771-6400    FAX (415) 771-7010

OPPOSITION TO PACIFIC MARITIME ASSOCIATION'S MOTION FOR
CONFIRMATION OF LABOR ARBITRATION AWARDS

orders of April 30. This Court is limited therefore to confirming the Coast Arbitrator's awards of 10:15 a.m. and 3:15 p.m. on April 30, and has no jurisdiction to hear PMA's arguments on any other issues.

**III.**   **There Is No Live Controversy Regarding the Constitutionality of Any Injunction That Could Have Been Issued In Response To PMA's April 30, 2008 Request; PMA's Arguments Against ILWU's Constitutional Defenses Are Therefore Not Properly Before the Court**

Despite having withdrawn its request for a temporary restraining order on May 2, PMA is attempting to litigate the constitutionality of such an order in its motion to confirm the Coast Arbitrator's awards. In essence, PMA is seeking an advisory opinion that it hopes to use to more easily obtain an injunction in the future. However, as there is no live case or controversy regarding the constitutionality concerning an injunction that was never issued and for which there is no pending request, this Court is prohibited by Article III of the U.S. Constitution from ruling on PMA's constitutional arguments. Advisory opinions of the type sought by PMA are not permitted, because "such suits often are not pressed before the Court with that clear concreteness provided when a question emerges precisely framed and necessary for decision from a clash of adversary argument exploring every aspect of a multifaced situation embracing conflicting and demanding interests." *Flast v. Cohen,* 392 U.S. 83, 96-97 (1968) (internal quotations omitted). *See also Teamsters Local 216 v. Granite Rock Co.,* 851 F.2d 1190, 1197 (9th Cir. 1988) (interpretation of decision not-yet-made impermissible as advisory opinion).

The Supreme Court has held that when a strike injunction "has long since expired by its own terms:

> we cannot escape the conclusion that there remain for this Court no actual matters in controversy essential to the decision of the particular case before it. … [T]he duty of this Court is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot

LEONARD CARDER, LLP
ATTORNEYS
1188 FRANKLIN STREET, SUITE 201
SAN FRANCISCO, CALIFORNIA 94109
TELEPHONE: (415) 771-6400    FAX (415) 771-7010

affect the matter in issue in the case before it. To express an opinion upon the merits of the appellants' contentions would be to ignore this basic limitation upon the duty and function of the Court, and to disregard principles of judicial administration long established and repeatedly followed."

*Local No. 8-6, Oil, Chemical and Atomic Workers v. Missouri,* 361 U.S. 363, 368 (1960) (internal quotations and citations omitted).

Further, neither the 'voluntary cessation' nor the 'capable of repetition yet evading review' doctrines permit this court to rule on the moot questions raised by PMA. The Coast Arbitrator ordered the Union not to take certain actions "during the May 1, 2008 day shift," a window of time that has long since closed. The voluntary cessation doctrine, by contrast, permits an otherwise moot case to be heard only if the defendant "is free to return to his old ways" and violate the same prohibition once again. *United States v. W.T. Grant Co.,* 345 U.S. 629, 632 (1953). Absent the invention of time travel, ILWU cannot in the future violate the Coast Arbitrator's April 30, 2008 awards, which pertained only to May 1, 2008.

Additionally, even if some hypothetical future action could be found to be a repetition of the events of May 1, 2008, PMA will likely have sufficient advance notice to obtain a ruling. The capable-of-repetition-yet-evading-review doctrine renders an otherwise moot case suitable for determination when the events at issue could recur and come to a conclusion before a court has an opportunity to rule. *Southern Pacific Terminal Co. v. ICC,* 215 U.S. 498, 514-515 (1911). As PMA acknowledges, it had notice of ILWU's planned May 1 actions as early as February, and was in possession of much of the evidence it presented to the Coast Arbitrator long before April 30.[5]

---

[5] The Supreme Court has held that because there is no live controversy regarding a strike injunction no longer in effect, *Local No. 8-60, supra,* the *Southern Pacific* exception should be applied only when a party argues that a particular state statute could affect its rights under federal labor law in the future. *See Division 1287 of The Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America v. State of Missouri,* 374 U.S. 74, 78 (1963) (union contends state statute allowing state to seize public utility and enjoin

LEONARD CARDER, LLP
ATTORNEYS
1188 FRANKLIN STREET, SUITE 201
SAN FRANCISCO, CALIFORNIA 94109
TELEPHONE: (415) 771-6400    FAX (415) 771-7010

LEONARD CARDER, LLP
ATTORNEYS
1188 FRANKLIN STREET, SUITE 201
SAN FRANCISCO, CALIFORNIA 94109
TELEPHONE: (415) 771-6400     FAX (415) 771-7010

In sum, none of the recognized exceptions to the mootness doctrine are applicable to PMA's motion. PMA argues that none of the constitutional defenses ILWU made in its April 30 Opposition to PMA's request for a TRO are applicable to PMA's instant motion to confirm the Coast Arbitrator's April 30 awards. ILWU agrees, as these constitutional arguments were made in opposition to a motion for an injunction that was never granted. PMA is therefore not entitled to an advisory opinion regarding the validity of ILWU's constitutional defenses to some hypothesized future action.

## CONCLUSION

ILWU has no objection to confirmation by this Court of the Coast Arbitrator's April 30 awards. However, for the reasons stated above, PMA is not entitled to any of the additional relief it seeks and its motion must be denied in its entirety.

DATED: July 3, 2008                    Respectfully submitted,

                                       LEONARD CARDER, LLP

                                       By: _____
                                           Phil A Thomas
                                           Attorneys for Defendants

---

strike preempted by federal labor law); *Super Tire Engineering Co. v. McCorkle*, 416 U.S. 115 (1974) (employers contend state statute permitting strikers to obtain economic assistance from state preempted by federal labor law).

OPPOSITION TO PACIFIC MARITIME ASSOCIATION'S MOTION FOR
CONFIRMATION OF LABOR ARBITRATION AWARDS

